The opinion made by the Court of Appeal seems to be in the wrong court of representing the Intellectual Property Court. Only one month ago, this court, Inc. v. Herrera, stated the following regarding viewpoint discrimination as well as its effects on others. The court stated the fact that whoever does not discriminate based on viewpoint, it does not discriminate based on a particular opinion, point of view, or ideology, so to speak. Instead, the guilt applies to all licensed and unlicensed facilities regardless what, if any, of the functions that may have to serve them on the services that are subject to 1915. In contrast, what the court is here, St. Francis' Creedus Unco, Chapter 83, applies to a privacy claim. It depends on what objections, as it relates in some cases to certain family and community services. If the privacy claim is unjust, to abortion and therefore to not perform abortions or infer for abortions, the ordinance applies. MR. STEINBERG. I'm not familiar with this. I did not read the chapter, but I think it's page 824, where it says, I'm not sure exactly what the definition of permanent service is. Is it separate? MR. LIEBERMAN. The ordinance specifies only the licensed and only licensed facilities. So that's incorrect. MR. STEINBERG. The ordinance specifies that the state is uncharged for any unlicensed facility. MR. LIEBERMAN. That's correct. MR. STEINBERG. So, what you're arguing is that it's equal to uncharged, and that these are some functions that you say, as it relates to certain family and community services. What is the difference between uncharged and uncharged? MR. LIEBERMAN. I think the difference on the website is that it's no objections to abortion and therefore you're supposed to perform it first for abortion. And the claim is exempt from all regulations of the ordinance that you're doing. MR. STEINBERG. I'm sorry, what is the definition of permanent service? MR. LIEBERMAN. So, the definition of permanent service is 613.3. Actually, it's 923.3. That's correct. A human services crisis center should be a crisis services center as defined in subsection G, and if it's not, directly provide or provide reverse claims for falling services on abortions or to emergency contraception. MR. STEINBERG. Right. So, this is very hard for the factors, because a lot of factors under this law fall back on the services that you claim to be uncharged. You say it's uncharged because it doesn't mean it's a human service, but at the same time, you're looking at it as an exemption of 2.48. And it's unlawful for me to claim that it's a services crisis  MR. LIEBERMAN. All right. I don't know if I'll be able to buy into that. MR. STEINBERG. And this ordinance has recently been classified as a viewpoint stimulation. In fact, it's not too bad. It's not bad. Those views are favored by the city and those claims are, number nine, banned from abortions. Number six, you are unregulated, and you can't have abortions all at once. About 100 of the services that you apply for have been in regulation under Chapter 93 of the law. It's in the regulation. It's in Section 8.3 of the San Francisco Act of 2016. It's not in the law. It's not in the law. It's not in the law. It's because MR. LIEBERMAN. I think you're correct. In your interpretation of the regulation, what's your answer to that? What are the R&Ds and what are the requirements for anyone doing drugs? It's not an option. It's not an option. MR. STEINBERG. There is doubt about the first amendment. It also misleads speeches of the public. I don't think there's any justification. We don't reach commercial speech. We don't reach commercial speech. It's under the String of Authority R&D versus the city-state law. These, there has been these efforts that have reduced human strength and creation for once. Do not apply for this new classification. For example, the Congressional Environmental Law that says, plus two HBs, and there's no conversions, can also be seen. The past few years, they've used a P-A-N-S-R mascot when operating independently of everyone, and it has been long-standing. It's in the air. It's in the air. It's in the air. It's common and it's common-sense. It doesn't cost us time. It costs us money. It's done for a reason. It costs the burden of one type of company. That's the kind of thing that can take the risk of the city just killing someone. Most companies, when the city approves of their message, they are unrelenting. They are relentless. And the extravaganza seems to be a universal, professional, optimistic thing. And you're not the first one to know what's in the history books of people. It's the most in-depth, it's the longest duration, it's the breaking point, it's the stages, it's not a person, it's a species, that's why it's so hard to name a few things, but it's a piece of the puzzle. It all comes to a lot of target in all kinds of industries, in all sectors. It can be, in my opinion, a cross-cutting question. How is that the primary objective? It's right in this book. Otters, the owners, they call themselves. I mean, so if you guys did this, you know, there's going to be a firestorm. That's the marketing proposal for that technology book. There is a beautiful tradition that works in the event, but there are some other organizations where you don't have to use discrimination anywhere, and instead you have a forum, a preface, a speech, and it's there to say you are using only the false institutions. These are separate worlds and bodies, and we are separate from that body. But when you use it, it says, in the realm of false institutions, it matters to you. It will help you do something for your organization. Explanations of that as well. I mean, in these times, perhaps, the complete entity can be used as the observation, while we're living false institutions, and it is that step. To the pointers, let me inform you that you can find some of these issues if you're looking at an ordinance that, above all, brings you to the center of any efforts regarding to whether or not it helps you focus on undesirable speech. It doesn't mean you can build as much a community service or an incentive committee for coordinating speech as much as you can help your community force a community service, because you know it's going to be fine if the organization's institutions are used to meeting the needs of the organization, but it's not going to be something that you have to constantly be arguing that you want to So, for example, Walgreens. Walgreens is a drug store. Walgreens offers contraception. It allows them to provide these premises for use of all three types of substances, but they don't buy Walgreens. It wouldn't be a good thing for a false institution. And the reasons for not buying Walgreens is because, in other words, it would apply to a lot of our organizations who use, who actually perform abortions or refer for abortions, and it would be an obtrusive abortion procedure that would be the reason for the discrimination between Walgreens and a lot of other organizations. That's a single purpose community. If Walgreens were exempted, there would have to be a reason for that. There would be a custom based institution which would have to have a common goal of being carried out by the federal law or by an institution, and there would be a need for family members to come together. So, for example, Alice appieces toxins for insulin, and Alice's weeks will often serve at once. And it would come up in each year. It's always reviewed by its duration, but to somehow convince Susan Bargers that it's the right thing to do. So, there's a certain requirement for Susan Bargers to embrace the duration of her life. Otherwise, if you argue that, the next issue that you're supposed to be trying would be to look at the core. And the core is such a complex issue. How do you make it work? Well, I mean, let's use the phrase, let's use the term in terms of universal speech which is what I'm here for, which is exactly what I want to do, which is keep it simple. So, as a matter of fact, I'll leave it to Susan Bargers to get her thoughts on this as a whole. She will lead us to her thoughts on this. So, there's also the case that there is a risk to it. And to be fair, it's hard to see it again. It's a problem. Oh, it's too much. It's too much. Yes. Yes. Some people have the question of whether the speech turns out to be an imitation of the free practice of law. And one aspect of that is whether the speech will affect public opinion in terms of speech which is exactly what you're pointing to. And what's been said first and foremost to many non-profits, charitable organizations throughout the country is that they will use their success in the charitable work they do to fundraise. So, for example, if I'm in a food kitchen and I serve three people a year, I'm going to have eight different door difficulties. I'm raising a food kitchen. Don't raise this menu to feed 10,000 people a year. So, I'll go to my door and say, we feed 10,000 people a year. Now, to try to fit a meal into a food kitchen, I have to say, we serve food. We serve hamburgers, hot dogs, beans, rice, and it's free of charge. And that's not really the logic of the speech. Of course, we do that in commercial speech because I use my success in the charitable TV as a reference for my speech. It's intended to be my strength. Thank you very much. I'm sorry. I'm sorry. It's all right. The problem with this one is that it's intended. This ultra-test completely swallows on charitable speech and ability, virtually. No charitable speech where fundraising is done based on how successful the charity is in providing service. It will be commercial because there's only one thing a charity does. It has a commercial background. It's eating poor. It's caring for the needy. It's all these things that are part of charitable activism. And if you can fundraise for it, you can support it. So, thank you. It's great. I'm very grateful. All right. So, I don't know whether or not you can answer all of today's questions, but I thought I'd like to make a short reservation time. Reservation four. I don't know if you have any further questions about it. But I'm going to use the last few minutes to use your speech to make some causal data. The ordinance does not directly target false statements. What it targets is all advertisements. And the question is, if there's an omission, does the state believe that false statements are an inadvertent thing that occurs? So, for example, in the final form, it says, inadvertently occurs that people are not told that they are in a sexual status because of respect or abuse. But then we find that you're talking about discrimination. And so, then what the city wants is to make sure that every time there is some statement that the ordinance is enforced. That's a very different kind of reflection than saying, this is what the city calls omissions. Which is, in most cases, a deprecation of the person who is most likely to take the first record of this person's omissions. The question is, are we misrepresenting something? Let's see if we've found that. Are we not saying we're biased? Are we not saying we're serious? We don't want to be biased. This is an orientation of false statements. We don't want to be just false statements. We want to be serious. Okay. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Please.
judges: D.W. Nelson, Tashima, Owens